# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

(1) DAVID BYRD, and )
(2) REGINA BYRD, )
)
        Plaintiffs, )
)
v. ) Case No.: CIV-23-745-HE
)
(1) STATE FARM FIRE AND )
CASUALTY COMPANY, and )
(2) RITA WALLENBERG INSURANCE )
AGENCY, INC., )

## NOTICE OF REMOVAL

1. State Farm Fire and Casualty Company ("State Farm") is Defendant in a civil action brought against it in the District Court of Cleveland County, State of Oklahoma, and titled *David Byrd and Regina Byrd v. State Farm Fire and Casualty Company and Rita Wallenberg Insurance Agency, Inc.*, Case No. CJ-2023-139.

2. Upon information and belief, at the time of the filing of this action and at the present time, Plaintiffs David Byrd and Regina Byrd were and are residents and citizens of the State of Oklahoma.

3. At the time of the filing of this action and at the present time, State Farm was and is a foreign corporation, duly organized and existing under the laws of the State of Illinois and no other state, with its principal place of business in Illinois; it is not a citizen of Oklahoma.

4. Defendant Rita Wallenberg Insurance Agency, Inc. (the "Wallenberg Agency") was a corporation organized and existing under the laws of the State of

Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. It was dissolved in February 2023. But even though the Wallenberg Agency was a resident of the State of Oklahoma, its citizenship is immaterial because the Wallenberg Agency is a fraudulently joined party against whom Plaintiffs do not have "any possibility of recovery." *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *1 (W.D. Okla. Apr. 8, 2014) (internal quotation marks omitted). Only ***properly joined*** defendants are material for diversity analysis. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest ***properly joined*** and served as defendants is a citizen of the State in which such action is brought." (emphasis added)); 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been ***properly joined*** and served must join in or consent to the removal of the action." (emphasis added)). Therefore, as set forth below and apparent from the Amended Petition, this Court should disregard the alleged citizenship of the Wallenberg Agency for purposes of diversity. *Smith*, 2014 WL 1382488 at *4.

5.  As the United States Supreme Court has recognized for well over a century, the right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiffs' jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiffs have no possibility of recovery against the non-diverse defendant. *Gellner v. Progressive N. Ins. Co.*, No. 21-CV-0401-CVE-JFJ, 2021 WL 5789146, at *2 (N.D. Okla. Dec. 7, 2021)

2

(citing *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)). Both grounds exist here.

6. The Wallenberg Agency is not properly joined because there is no "reasonable basis to believe the plaintiff[s] might succeed in at least one claim against [it]." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). Plaintiffs, moreover, have shown fraudulent joinder in the pleading of jurisdictional facts by using a form petition, relied upon by their counsel in numerous other cases against State Farm, that contains allegations that have no application to the actual facts and were thus "manufactured simply in an effort to avoid removal to federal court." Order at 2-3, 4 *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE (W.D. Okla. Jan. 26, 2023), ECF No. 37 (granting jurisdictional discovery prior to resolution of motion to remand noting that allegations in petitions filed by Plaintiffs' counsel "were identical, cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibly be expected"); Order at 3-5, *Goebel*, No. CIV-22-0882-HE (W.D. Okla. Aug. 7, 2023), ECF No. 59 (denying motion to remand finding actual fraud in the pleading of jurisdictional facts); Order at 3-5, *Marino v. State Farm Fire & Cas. Co.*, No. 5:22-cv-00885-HE (W.D. Okla. Aug. 7, 2023), ECF No. 52 (same); Order at 2-5, *Baltasar v. State Farm Fire & Cas. Co.*, No. CIV-22-0928-HE (W.D. Okla. Aug. 8, 2023), ECF No. 26 (same).

7. Plaintiffs purport to sue the Wallenberg Agency for negligent procurement of insurance and constructive fraud and negligent misrepresentation. Neither claim has a "basis in the alleged facts." *Nerad*, 203 F. App'x at 913.

8. Plaintiffs' negligent procurement claim fails because they received the policy they allege they requested and no act by their agent caused the damages for which they complain. To prevail on a claim for negligent procurement, "'a plaintiff must show that the insurance agent agreed to procure insurance coverage effective as of a certain date and time, or of a certain breadth, and then failed to do so.'" *Pardue v. Humble Ins. Agency*, No. CIV-14-1049-D, 2016 WL 4275816, at *2 (W.D. Okla. Aug. 12, 2016) (quoting *Hardison v. Balboa Ins. Co.*, 4 F. App'x 663, 673 (10th Cir. 2001)).

9. According to the Amended Petition, Plaintiffs contacted the Wallenberg Agency and "requested [it] obtain a replacement cost policy that would provide coverage for their home in the event of a loss (i.e., homeowners' replacement coverage)." Am. Pet., ¶ 6, Ex. 3 hereto. They allege they "specifically requested a policy that would fully replace their roof in the event of a loss, without exclusion of any weather-related losses." *Id.* Plaintiffs contend State Farm required the Wallenberg Agency "to conduct an inspection of the Insured Property before State Farm [would] issue replacement cost coverage" and "maintain current information about the Insured Property via periodic inspections thereafter." *Id.*, ¶ 7. "[T]o qualify for full replacement cost coverage on the roof (as opposed to actual cash value, 'ACV')," Plaintiffs allege "Wallenberg was required to verify the roof's condition to ensure it satisfied State Farm's underwriting guidelines." *Id.* They assert the Wallenberg Agency "specifically advised and represented to Plaintiffs that the roof was in good condition, satisfied all of State Farm's guidelines and underwriting requirements (*i.e.*, its age, physical condition, etc.), and therefore qualified, and was eligible for full replacement cost coverage (versus ACV)—the best policy State Farm

4

offered." *Id.*, ¶ 10. Thus, "Wallenb[e]rg procured, and State Farm issued, the Policy," No. 36-EJ-4452-8, "with full replacement cost coverage for the roof." *Id.*, ¶¶ 4, 11. Plaintiffs allege the Wallenberg agency's procurement of "full replacement coverage on Plaintiffs' Insured Property (including the roof)" was "illusory," for when they submitted a claim for "wind/hail damage to their roof," State Farm "confirmed Plaintiffs' home had sustained wind/hail damage," for it found "damage to the gutter, downspout, and certain ceilings, but inexplicably did not find hail damage to the roof shingles." *Id.*, ¶¶ 18-19, 43. "As a result, the sustained damage identified by State Farm that was covered under the Policy was minimal." *Id.*, ¶ 19. They allege State Farm's decision was "predicated upon a systemic, state-wide Scheme designed to increase denials and/or decrease payments on valid roof claims," which includes attributing much of the damage to preexisting issues without a pre-policy inspection and "limit[ing] claim payments to damage caused by only the rarest and most severe hail storms, which State Farm accomplishes by ignoring hail damage that does not penetrate the shingle mat." *Id.*, ¶ 21.

      10.    As Plaintiffs' Amended Petition admits, the Policy under which they sue is a replacement cost value ("RCV") policy, rather than an actual cash value ("ACV") policy. Am. Pet., ¶¶ 4, 11. "Replacement cost insurance provides greater coverage than an actual cash value policy and 'is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (citation omitted). "Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full replacement cost; otherwise, the insured may recover only the actual cash

value…. The reason for this requirement is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss." *Id.* (citation and internal quotations omitted). *See also Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*, No. CIV-21-357-PRW, 2022 WL 16856111, at *3-4 (W.D. Okla. Nov. 10, 2022) (explaining RCV policy in same manner).

11. The Declarations to Plaintiffs' Policy show that their dwelling coverage was "A1 Replacement Cost – Similar Construction." Renewal Declarations, Ex. 6 hereto. This section of the Policy provides that "until actual repair or replacement is completed, [State Farm] will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property." Policy, § 1.a.(1), p. 18, Ex. 7 hereto. "[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiffs] actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less." Policy, § 1.a.(2), p. 18. Thus, the fact that Plaintiffs received exactly the policy they claim they requested is fatal to their negligent procurement claim. *See Pardue*, 2016 WL 4275816 at *2; Order at 5, *Marino*, No. 5:22-cv-00885-HE (W.D. Okla. Aug. 7, 2023), ECF No. 52 (denying motion to remand because it was "undisputed that the policy the [plaintiffs] wanted — one for full cost replacement coverage of their property — was in fact delivered"); Order at 6, *Goebel*, No. CIV-22-0882-HE (W.D. Okla. Aug. 7, 2023), ECF No. 59 (same).

12.     Even if the Policy were different than requested (and it isn't), that is not what caused the denial of Plaintiffs' claim and thus is not what caused the alleged injury to Plaintiffs. As with all negligence claims, a required element of a negligent procurement claim is *causation*. A plaintiff must show he or she "suffered damages flowing from the breach of the agent's duty of care." *Castens v. Conseco Life Ins. Co.*, No. 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012). The injury alleged by the Plaintiffs from the conduct of the agent and of State Farm in this case is the same—failure to pay to replace Plaintiffs' roof. The cause of that alleged injury is State Farm's finding that no hail damage existed to the roof's shingles. Am. Pet., ¶ 19. RCV instead of ACV only matters if there is a loss from a covered peril (otherwise there is no loss to calculate). *See* Policy, § 1, p.12, Ex. 7 hereto. State Farm found no hail damage to the shingles, and thus the cost to repair or replace them never arose. Not only does this show that the alleged absence of replacement cost coverage did not injure Plaintiffs, it also negates any claim that the RCV coverage, under these facts, was illusory. It was instead simply immaterial.

13.     To the extent Plaintiffs allege they did not receive the policy requested because of the alleged "Scheme" by State Farm to "limit[] claim payments to damage caused by only the rarest and most severe hail storms, which State Farm accomplishes by ignoring hail damage that does not penetrate the shingle mat" (Am. Pet., ¶ 21), as the Court recognized in *Goebel* and *Marino*, that complaint speaks to State Farm's application of the policy language in the claims administration process, which if established, may be a basis for a claim against State Farm but "is something different from proving that the agent failed to deliver the policy promised." Order at 6, *Marino*, No. 5:22-cv-00885-HE (W.D. Okla.

7

Aug. 7, 2023), ECF No. 52; Order at 6, *Goebel*, No. CIV-22-0882-HE (W.D. Okla. Aug. 7, 2023), ECF No. 59.

14.     Furthermore, Plaintiffs' Amended Petition, like others filed by their counsel, is replete with confusing and irrelevant allegations regarding the calculation of the replacement cost value of their home. *See, e.g.*, Am. Pet., ¶¶ 12-15. There can be no dispute, however, that Plaintiffs had sufficient coverage to replace their roof. According to the Amended Petition, Plaintiffs' contractor "advised the roof would need to be fully replaced, estimating the cost of the replacement to be $23,953.08." *Id.*, ¶ 20. Plaintiffs had more than $500,000 in coverage on their dwelling. Declarations, Ex. 6 hereto. "So, any issue as to coverage amounts did not lead to any of the damages that plaintiffs assert via their claim for damage to the roof." Order at 7, *Goebel*, No. CIV-22-0882-HE (W.D. Okla. Aug. 7, 2023), ECF No. 59; *see also* Order at 8, *Marino*, No. 5:22-cv-00885-HE (W.D. Okla. Aug. 7, 2023), ECF No. 52.

15.     Plaintiffs' negligent misrepresentation/constructive fraud claim, premised on the same erroneous facts, is implausible for the same and similar reasons. To state a claim for constructive fraud, a plaintiff must allege facts to show (1) defendant owed plaintiff a duty of full disclosure; (2) defendant misstated a fact or failed to disclose a fact to plaintiff; (3) defendant's misstatement or omission was material; (4) plaintiff relied on defendant's material misstatement or omission; and (5) plaintiff suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). None of these elements exist

16.     To support the claim, Plaintiffs repeat their allegations that the Wallenberg Agency misrepresented "the Policy was one of true, guaranteed replacement and their roof

8

would be fully replaced in the event of a weather-related loss"; "the Insured Property (including the roof) met all underwriting requirements"; "the Insured Property (including the roof) was in good condition"; "Wallenb[e]rg followed and met State Farm's underwriting policies/guidelines by applying first-hand knowledge it obtained from inspection of Plaintiffs' Insured Property (including the structure, roof, specific amenities, construction qualities, age, and condition) to calculate the replacement cost values using State Farm's valuation software"; "the replacement cost valuation (as calculated by Wallenb[e]rg) was accurate and commensurate with current market and reconstruction costs in an amount necessary for Plaintiffs to replace and/or rebuild Plaintiffs' Insured Property back to its pre-loss condition in the event of a loss"; and "Defendants properly conducted all necessary inspections of the Insured Property." Am. Pet., ¶¶ 50-53. Again, any statement that the Policy would provide "replacement cost coverage" or cover "any weather event" or that the property met "all underwriting guidelines" would be true, for indeed Plaintiffs were issued a replacement cost Policy that covers accidental direct physical loss. *See* Policy, § 1, p.12 ("We will pay for accidental direct physical loss to the property . . . ."); Policy, § 1.a.(1), p.18.

       17.     Plaintiffs also cannot establish the existence of a "legal or equitable duty" on the part of the Wallenberg Agency as must exist to state a claim for constructive fraud. The only duty alleged is "a duty to exercise reasonable diligence and skill in obtaining and accurately notifying Plaintiffs of the nature and character of the insurance procured." Am. Pet., ¶ 52. This Court has found those same general allegations regarding the duties of an insurance agent insufficient. *Country Gold, Inc. v. State Auto Prop. & Cas. Co.*, No. CIV-

14-1398-D, 2015 WL 431638, at *4 (W.D. Okla. Feb. 2, 2015). The duty from which a negligent procurement theory arises, "to act in good faith and to exercise reasonable care, skill and diligence in the procurement of insurance," does not automatically establish the "legal or equitable" duty required for a constructive fraud claim. *See, e.g., Siddique v. W. Heritage Ins. Co.*, No. CIV-14-456-SPS, 2015 WL 2451734, at *3 (E.D. Okla. May 21, 2015).

18.     Plaintiffs cannot possibly establish that the Wallenberg Agency owed them a duty to inspect the roof for "pre-existing conditions" on their home, either. Rita Wallenberg was a licensed insurance agent, not a home inspector. Neither she nor her staff had the training and qualifications to determine if a roof was poorly constructed, and it was not her job to do so. Rather, what underwriting required at the time Plaintiffs' Policy was sold in January 2006 was that agents take a picture of the front and back of the house and submit the pictures to underwriting for underwriting to assess the risk and decide whether to bind coverage. *See* Photos, attached hereto as Ex. 8; RRI Rooftop Survey, attached hereto as Ex. 9. State Farm does not even allow agents to get on the roof of a house. A third party was engaged to conduct a rooftop survey of Plaintiffs' house, which found the roof (that was reportedly eight years old at the time) was in good condition. *See* RRI Rooftop Survey, Ex. 9. The inspector's report expressly stated that it was "for insurability purposes only and [did] not provide any representations or warranties (express or implied) as to the actual performance or condition of the roof" and the "report [was] not performed as an undertaking on behalf of, or for the benefit of, the named insured or others." *Id.* The agent's obligation at the time to take pictures of the house was, at most, a contractual duty owed *to*

10

*State Farm*, not Plaintiffs. Order at 6-7, *Goebel*, No. CIV-22-0882-HE (W.D. Okla. Aug. 7, 2023), ECF No. 59 ("Whatever underwriting duties [the agent] may have owed to State Farm, as agent to principal, do not necessarily translate into a duty <u>to the insured</u>. In short, there is no basis shown here for a duty to plaintiffs, grounded in [the agent's] 'underwriting' function, that could plausibly be a basis for a negligence or other claim based on some legal duty to plaintiffs."); Order at 7, *Marino*, No. 5:22-cv-00885-HE (W.D. Okla. Aug. 7, 2023), ECF No. 52 ("State Farm may well have multiple requirements as to what it expects its agents to do as part of its underwriting process, but that is not the same thing as concluding there is some underwriting duty <u>owed to the insured</u>."). The weight of authority is clear: an insurance agent owes no underwriting duty to its customers. *See e.g., Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 229 (Mo. Ct. App. 1998) (refusing to find agent had legal duty to customers to abide by underwriting guidelines in placing coverage); *Salopek, Tr. for Salopek Fam. Heritage Tr. v. Zurich Am. Life Ins. Co.*, 428 F. Supp. 3d 609, 622 (D. N.M. 2019) ("New Mexico imposes no underwriting duty of care"); *Gray v. Derderian*, 464 F. Supp. 2d 105, 110 (D. R.I. 2006) (insurer had no duty to inspect insured property); *Hartford Steam Boiler Inspection & Ins. Co. v. Cooper*, 341 So. 2d 665, 668 (Miss. 1977) (same). Insurance companies conduct underwriting for their own benefit—to recognize and reduce risk—and not as a service to inform prospective (or existing) insureds of the condition of their house. *See Gray*, 464 F. Supp. 2d at 109. Nor can there be any assumed duty by an insurance agent to perform the duties of a home inspector.

19. As with the negligent procurement claim, Plaintiffs' Amended Petition further demonstrates that the damages alleged were not caused by the purported

11

misstatements, and thus the element of causation required to establish constructive fraud/negligent misrepresentation is absent, too. The only injury alleged by Plaintiffs for any claim is that "[a]s a result of the ***Defendants'*** [conduct]"—not the Wallenberg Agency's alone—"Plaintiffs have sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, [and] physical and emotional suffering." Pet., ¶ 59. *See also id.* at ¶ 37 (bad faith claim); *id.* at ¶ 47 (negligent procurement claim). Plaintiffs suffered no damage from the alleged misrepresentations because none are the reason for the claim denial. The only "deprivation of monies" identified (or even plausible) was State Farm's refusal to pay to replace Plaintiffs' shingles because it found they were not damaged by hail. That decision had nothing to do with inspections being completed, whether the roof met all "underwriting guidelines," whether Plaintiffs had RCV coverage, or how State Farm pays a claim under RCV provisions.

20. Notably, Plaintiffs' roof was replaced following a May 2010 hail storm. *See* Underwriting Note, attached hereto as Ex. 10. So, they would have been on notice then as to what their Policy covered, and thus, their claims for negligent procurement or misrepresentation asserted in 2023 based on the actions of the agent in selling the policy would be long ago barred by the two-year statute of limitations for torts. 12 O.S. § 95(3). Further, there can be no question that the roof, which was brand new in 2010, was in good condition and met all underwriting guidelines. This would also negate any issue, if one even existed, as to alleged pre-existing damage to the roof when the Policy was issued in 2006.

21.     This is one of numerous cases against State Farm filed by the same group of attorneys and defended by the undersigned counsel alleging that dozens of different agents made identical misrepresentations and committed identical underwriting failures, based on which those Oklahoma-based agents are also sued. For example, in this and the other cases, the plaintiffs allege their agent "specifically advised and represented to Plaintiffs that the roof was in good condition, satisfied all of State Farm's guidelines and underwriting requirements …, and therefore qualified and was eligible for full replacement cost coverage (versus ACV)—the best policy State Farm offered." Am. Pet., ¶ 10; Order at 3-4, *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE (W.D. Okla. Jan. 26, 2023), ECF No. 37 (observing same identical allegations in two cases against different agents before the judge). They similarly allege that "Wallenberg assured Plaintiffs the Policy provided the broadest form of coverage available today" and "was an outstanding value for Plaintiffs' insurance dollars" and that "State Farm would conduct itself in accordance with Oklahoma law." Am. Pet., ¶¶ 11, 16. In *Marino* and *Goebel*, Judge Heaton recognized the implausibility that different agents made the same statements and engaged in the same alleged misconduct in all the same ways and thus granted State Farm's motion to conduct jurisdictional discovery in defense of Plaintiffs' Motion to Remand. Order at 3-4, *Goebel*, No. CIV-22-0882-HE ("In short, the allegations are identical, cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibility be expected."). Discovery proved that these allegations were manufactured in an attempt to state a claim

13

against the agents and avoid federal court, and thus, the motions to remand were denied.[1] Order at 3-5, *Goebel*, No. CIV-22-0882-HE (W.D. Okla. Aug. 7, 2023), ECF No. 59 (denying motion to remand finding actual fraud in the pleading of jurisdictional facts and noting the cookie-cutter "petition filed by plaintiffs [wa]s replete with false statements" and there was "no good faith basis for a substantial portion of the facts alleged and which [were] relied on in an effort to state a claim against the resident defendant"); Order at 3-5, *Marino v. State Farm Fire & Cas. Co.*, No. 5:22-cv-00885-HE (W.D. Okla. Aug. 7, 2023), ECF No. 52 (denying motion to remand, observing: "[t]here are, in short, multiple allegations going to the potential liability of [the agent] for which there is zero evidence, indicating that those allegations were made without a valid, good faith basis. The court is left with the firm impression that many, and perhaps most, of the significant factual allegations as to [the agent] were included because they met someone's formulaic view of what a court might accept as a basis for claim against [the agent], not because there was a real factual basis for them. Those circumstances support viewing [the agent] as fraudulently joined on the basis of the first potential grounds for doing so—actual fraud in the pleading of at least some of the jurisdictional facts."); Order at 2-5, *Baltasar v. State Farm Fire & Cas. Co.*, No. CIV-22-0928-HE (W.D. Okla. Aug. 8, 2023), ECF No. 26 (denying motion to remand, "caution[ing] plaintiff's counsel that the filing of a pleading in this court containing false and/or inaccurate statements like those discussed above is likely to result

---

[1] After Judge Heaton entered his order in *Goebel* and before serving the Defendants, Plaintiffs filed an Amended Petition where they eliminated *some* of the phrases Judge Heaton recognized as problematic. The substance though, is the same.

14

in significant sanctions" and observing: "[p]lainly, many of the central allegations here as to [the agent] not only lack evidentiary support—they are simply false. No presumption against removal jurisdiction can or should insulate a plaintiff from misrepresentations like those involved here, and the court declines to allow plaintiff to now attempt to create some new set of theories based on different facts from those initially alleged"). This case is no different. Plaintiffs have no plausible claim against the Wallenberg Agency. *Cf. Daily v. USAA Casualty Insurance Co.*, No. CIV-14-0550-HE, 2014 WL 12729172, at *2 (W.D. Okla. Nov. 19, 2014) (reasoning that Plaintiffs' counsel's "use of identical pleadings in multiple similar cases" alone cast doubt on their ability to state a claim against the defendants). Plaintiffs' counsel have chosen to baselessly accuse the Wallenberg Agency—along with dozens of other well-meaning Oklahoma agents, whose careers and livelihoods depend on their good name—of negligence and fraud, solely so they can destroy diversity and litigate against State Farm in a more favorable forum. This is not how the legal system is supposed to work, nor will the law or facts permit it.

22. Consent to removal is only required from "defendants who have been properly joined and served." 28 U.S.C. § 1446(b)(2)(a). Although the Wallenberg Agency has been served in this matter, it is not required to consent to this removal because, as set forth *supra*, the Wallenberg Agency is an improperly joined party.[2] However, to the extent consent is required, the Wallenberg Agency agrees to removal.

---

[2] Indeed, as an improperly joined party, the Wallenberg Agency is not subject to this Court's jurisdiction and Plaintiffs' claims against it must be dismissed. *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004); *Hicks v. FG Mins. LLC*, No. CIV-19-203-TDD, 2020 WL 2104928, at *6 (E.D. Okla. May 1, 2020); *Jonnada v.*

15

23. Plaintiffs claim to be entitled to recover an amount exceeding that specified by 28 U.S.C. § 1332 to invoke federal diversity jurisdiction and, therefore, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. *See* Amd. Pet., ¶¶ 33, 37, Ex. 3 hereto.

24. Because the properly joined parties are diverse and the amount in controversy exceeds $75,000, this is the kind of action of which the United States District Courts have original jurisdiction because of diversity of citizenship and sufficiency of amount in controversy.

25. Upon information and belief, State Farm was served with the Amended Petition on July 31, 2023 by service on the Oklahoma Insurance Department. This Notice of Removal is, therefore, timely under the provisions of 28 U.S.C. § 1446(b).

26. A copy of the docket sheet and copies of all process, pleadings and orders filed or served upon State Farm in the aforementioned state action are attached hereto, marked as Exhibits 1- 5 and made a part hereof.

Respectfully submitted,

/s/ *Timila S. Rother*
Timila S. Rother, OBA #14310
Paige A. Masters, OBA #31142
**CROWE & DUNLEVY**
A Professional Corporation
Braniff Building
324 N. Robinson Avenue, Ste. 100
Oklahoma City, OK 73102-8273
(405) 235-7757
(405) 272-5226 (Facsimile)

---

*Liberty Ins. Corp.*, No. CIV-19-456-D, 2019 WL 6119233, at *5 (W.D. Okla. Nov. 18, 2019).

                                              timila.rother@crowedunlevy.com
                                              paige.masters@crowedunlevy.com

                                              **ATTORNEYS FOR DEFENDANT**
                                              **STATE FARM FIRE AND CASUALTY**
                                              **COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

       I certify that on August 21, 2023, the same date this Notice of Removal was filed in the United States District Court for the Western District of Oklahoma, a true and correct copy of said Notice of Removal was served upon the above-named plaintiffs by mailing said copies to the parties' attorneys of record:

Jeffrey D. Marr
Carole Dulisse
**MARR LAW FIRM**
4301 Southwest Third Street
Oklahoma City, OK 73108

Reggie N. Whitten
Michael Burrage
J. Revell Parrish
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK  73102

Chad E. Ihrig
Nick Marr
Ashton Poarch
**NIX PATTERSON, LLP**
8701 Bee Cave Road
Building 1, Suite 500
Austin, Texas 78746

**ATTORNEYS FOR PLAINTIFFS**

       I further certify that on August 21, 2023, a true and correct copy of this Notice of Removal was delivered to the Cleveland County Court Clerk for filing.

                                              /s/ *Timila S. Rother*
                                                 Timila S. Rother

5412526